UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| In re: | } | Case Nos. |
|---|---|---|
| **Mary Jemison;** | } | **07-40761** |
| **Anthony Lee Rounds;** | } | **07-40803** |
| **Harold E. & Carolyn A. Brown; and** | } | **07-40916** |
| **Frances L. Bailey,** | } | **07-40917** |
| | } | |
| Debtors. | } | CHAPTER: 13 |

## MEMORANDUM OPINION ON PLAN CONFIRMATIONS

I. Facts and Jurisdiction

These chapter 13 cases came before the Court for plan confirmation. Each proposed plan contains a provision purporting to postpone the re-vesting in the debtor of all property of the estate until the case is dismissed, converted or closed.[1] At the hearings to consider confirmation of the plans, the Court, *sua sponte,* raised the issue of whether confirmation should be denied because these provisions violate paragraphs (1) and (3) of 11 U.S.C. §§ 1325(a). Confirmation of the proposed plans was taken under submission, and parties in interest were invited to submit briefs for the Court's consideration. No briefs were submitted.

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference by the District Court. These are core proceedings under 28 U.S.C. § 157(b)(2)(L).

---

[1] The plan provisions at issue state "Property of the estate will vest according to Section 1306," or "Revesting property of the estate shall not occur until dismissal or discharge." Although the former provision is ambiguous, the Court understands its intent is to delay vesting of all property of the estate in the debtor until the case is closed, dismissed or converted.

1

II. Legal Analysis

Commencement of a case under any chapter of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*, and herein the "Code") creates an estate. 11 U.S.C. § 541(a). Section 541 of the Code describes what property is included in the estate.[2] In a chapter 13 case, property of the estate is expanded by Section 1306(a) to include not only all of the debtor's pre-petition property specified in Section 541, but also all of the same type property acquired by the debtor post-petition, plus the debtor's post-petition earnings. The principal difference between the estate of a chapter 13 case and that of a chapter 7 case is the inclusion of the debtor's property, including earnings, acquired after the commencement of the case. The Code does not anticipate all of the debtor's pre- and post-petition property will remain vested in the estate for the entire term of the chapter 13 plan. Section 1327(b) provides, "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Although some courts find "tension" between Sections 1306 and 1327, this Court finds none.[3] These two Sections work together, hand in glove.

As mentioned above, the commencement of a chapter 13 case creates an estate comprised of the debtor's pre- and post-petition property, including post-petition earnings. 11 U.S.C. §§ 541, 1306. A chapter 13 plan must provide for payment of claims through periodic payments made to the trustee. 11 U.S.C. § 1322(a)(1). These payments are made, for the most part, from the debtor's post-

---

[2] In this opinion, the term "Section" refers to a section or subsection of the Code.

[3] *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000); *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333 (11th Cir. 2000); *In re LaPlana*, 363 B.R. 259, n.4 (Bankr. M.D.Fla. 2007); *In re Moore*, 312 B.R. 902 (Bankr. N.D. Ala. 2004).

2

petition wages.[4] A few plans will propose that a portion of the payments to trustee will come out of proceeds from the sale or other disposition of property of the estate.[5] Thus, when it comes time for property of the estate to be returned to the debtor at confirmation, the plan and order of confirmation should provide for the estate to retain a sufficient portion of the debtor's future earnings, and occasionally other property, to fund the plan. If a partial and measured exception to the vesting of the estate's property back in the debtor is not made in the plan and confirmation order, the estate will not have a source from which to make the plan payments. After analyzing the creation of a chapter 13 estate and the configuration and funding of a plan in the foregoing context, the process contemplated by Sections 1306 and 1327 works well and without tension. *Am. Gen. Fin., Inc. v. McKnight (In re McKnight)*, 136 B.R. 891, 894 (Bankr. S.D. Ga. 1992) (finding a similar interpretation provides consistency between Sections 1306 and 1327).

The Eleventh Circuit made clear what the law in this circuit is regarding the vesting of the estate's property in the debtor at confirmation: "We therefore echo the conclusion of the Seventh Circuit and 'read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not

---

[4] 11 U.S.C. §§ 1322(a)(1), 1325(b)(1)(B), (c).

[5] Occasionally chapter 13 debtors will propose plans that anticipate the sale of real estate, such as vacation property, or an extra vehicle. The proceeds from such a sale are disbursed by the trustee as a "one time payment" to creditors. Additionally, it is not unusual for the trustee to object to confirmation of a plan because the debtor proposes to retain unnecessary property (usually an extra car, truck, boat or recreational vehicle). As a condition to plan confirmation, the trustee will require the unnecessary property be sold to generate cash to pay unsecured claims or if such property is encumbered, surrendered to satisfy, in whole or part, claims secured by such property, and thereby free-up the debtor's earnings for plan payments.

necessary to the fulfillment of the plan.' " *Telfair v. First Union Mortg. Corp.,* 216 F.3d 1333, 1340 (11th Cir. 2000), quoting *Black v. United States Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997). S*ee also In re McKnight, supra.*

The Circuit Court in *Telfair* did not discuss to what extent, if any, Sections 1322(b)(9) and 1327(b) may allow a plan to provide for the estate to retain property post-confirmation in excess of what is needed to sustain the plan.[6] Each plan now under consideration provides that *all* property of the estate will not vest in the debtor until the case is closed, dismissed or converted. Much of the property to be retained by the estates in these cases will not be used to fund the debtors' plans or serve any other legitimate purpose contemplated by the plans or the Code, and in particular chapter 13 of the Code. So why do these debtors want to delay the re-vesting of all the estates' property in themselves? The Court believes the answer can be found through an analysis of Section 362.

The debtor's property and the estate's property are not protected to the same extent by the automatic stay imposed by Section 362(a). The stay under paragraphs (2), (3) and (4) of Section 362(a) applies to the estate's property but not the debtor's property. Consequently, for the most part, the estate's property is protected from both pre- and post-petition creditors, while debtors and their

---

[6] This Court is aware some Courts and authorities have concluded it is permissible under Section 1322(b)(9) for a plan to postpone the vesting of all the estate's property back in the debtor for the life of the chapter 13 case. *See e.g. Hampton v. Yam's Choice Plus Autos, Inc. (In re Hampton)*, 319 B.R. 163 (Bankr. E.D. Ark. 2005); *In re Thomas*, 291 B.R. 189 (Bankr. M.D.Ala. 2003); 2 Keith M. Lundin, Chapter 13 Bankruptcy (2nd ed., Wiley Law Publications 1994), § 6.16 at 6-57, 6-58 ("the Chapter 13 plan should very specifically continue the estate, to include all postconfirmation wages of the debtor – those committed to funding the plan and those to be received by the debtor – pending completion of payments under the plan." (Footnotes omitted); *see also In re Durant,* 239 B.R. 859 (Bankr. N.D.N.Y. 1999); *In re Lee*, 156 B.R. 628, n. 8 (Bankr. D. Minn. 1993); *In re Beasley*, 22 B.R. 773 (Bankr. Tenn. 1982); *In re Adams*, 12 B.R. 540, n.2 (Bankr. Utah 1981). For the reasons discussed herein, this Court has reached a contrary conclusion.

4

property are only protected from pre-petition claims.[7] This Court is convinced the more extensive protection given to the estate's property is the reason these debtors are attempting to retain all their property, including wages, in the estates for the duration of their cases. If post-petition creditors can reach only debtors individually, but not property and wages that remain vested in the estate, then these creditors have no meaningful remedy while the case is pending unless they first obtain relief from the stay to pursue property of the estate before commencing state law collection remedies. Such a two-step process gives debtors, who leave all their property in the bankruptcy estate, unwarranted stay protection, and it imposes additional collection expenses and delays on post-petition creditors. Moreover, relief from the stay is problematic because it will allow the post-petition creditor to reach estate property earmarked for plan payments, which otherwise would go to creditors holding allowed pre-petition claims, including home mortgages being paid through the trustee. Debtors may argue that if stay relief is limited to that portion of the estate not devoted to funding the plan, the result is no different from what would have been achieved by returning that same portion to the debtor at confirmation. Such an argument ignores the additional expense and delay incurred by post-petition creditors in prosecuting lift-stay motions under Section 362(d), and it fails to recognize that such expense is often substantial enough, when compared to the amount of the post-petition debt, to persuade creditors to forego collection efforts and write off the debt.

If the plans now before the Court are confirmed without change, that portion of the estates' property otherwise vesting in the debtors at confirmation pursuant to Section 1327(b) will remain

---

[7] 11 U.S.C. § 362(a). *See Matter of Growth Development Corp.*, 168 B.R. 1009, 1016 (Bankr. N.D. Ga. 1994) ("The language of [Section 362(a)(3)] is devoid of any distinction between prepetition and postpetition claims. So long as a creditor attempts to obtain property of the estate, the automatic stay remains in full force and effect.").

5

vested in the estates. Consequently, paragraphs (3) and (4) of Section 362(a) will stay post-petition creditors from reaching this property, including surplus property not needed to fund the plans. The automatic stay as to the estates' property may remain in effect until such property is no longer property of the estates, which may be up to five years. 11 U.S.C. §§ 362(c)(1), 1325(b)(4). Other than garnering extended automatic stay protection, from the debtors' perspective, there can be no other reason for the plans now under consideration to propose a delay in vesting all the estates' excess property in the debtors. If there are other reasons, none was evident from the plans or otherwise offered by these debtors. Thus, herein lies the essence of the issue to be resolved: Does a plan provision, which surreptitiously extends the automatic stay to post-petition creditors by retaining all the debtor's property in the estate until a chapter 13 case is closed, dismissed or converted, violate paragraphs (1) and (3) of Section 1325(a), or is such a provision permitted under Sections 1322(b)(9) and 1327(b)?

Paragraphs (1) and (3) of Section 1325(a) state, "the court shall confirm a plan if . . . the plan complies with the provisions of this chapter and with the other applicable provisions of this title . . . [and] has been proposed in good faith and not by any means forbidden by law . . . ." As previously discussed, Section 1327(b) provides property of the estate will vest in the debtor at confirmation, "[e]xcept as otherwise provided in the plan or the order confirming the plan." In addition, Section 1322(b)(9) provides that a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity."[8] This Court does not interpret Sections 1322(b)(9) and 1327(b) as permitting an arbitrary delay in the vesting of

---

[8] An example of a permitted application of Section 1322(b)(9) is a plan that proposes property securing a claim will vest at confirmation in the holder of such claim in full or partial satisfaction of the claim.

6

the estate's property in the debtor in excess of the portion reasonably anticipated as needed to fund the plan within the confines of the Code. More specifically, only that portion of the estate's property reasonably calculated to provide for the payment of the plan over the applicable commitment period should be retained by the estate, and the remainder must be returned to the debtor. The estate is not a safe harbor in which debtors may moor their property, including earnings, for protection from post-petition creditors.

The primary purpose of chapter 13 is to allow a financially distressed consumer-debtor to reorganize and adjust his or her pre-petition debts through a wage-funded payment plan structured within the parameters of chapter 13 of the Code, and after making all plan payments the debtor may receive a discharge of any remaining unsecured consumer debts. Through this same process, debtors may cure defaults in secured debts and save homes and automobiles from foreclosure and repossession, extend payment of priority and non-dischargeable claims (e.g. taxes, domestic support obligations, student loans) over the plan's commitment period, and continue to pay ongoing maintenance installments due on long term debts such as home mortgages.[9] During the life of a chapter 13 case, the debtor is expected to stay on the financial straight-and-narrow, pay plan payments as they become due, and ultimately receive a discharge and fresh start under Section 1328. Incurring additional debts post-petition, except for necessities needed to perform under the plan,

---

[9] 11 U.S.C. § 1322(a),(b). Ongoing maintenance payments on long-term secured debts, such as home mortgages, may be paid through the chapter 13 trustee or directly to the creditor. When a debtor's plan pays ongoing maintenance payments through the trustee, the debtor can legitimately allow the estate to retain that portion of the debtor's future wages needed to pay such payments. If the debtor elects to pay these payments "outside the plan" and directly to the creditor, then the wages needed for these payments never go through the trustee and are not retained by the estate after confirmation. *See* 11 U.S.C. § 1322(b)(8) (permitting payment of a claim from the estate's or the debtor's property).

7

should be avoided. Otherwise, the debtor steps back onto the debt merry-go-round with little chance of ever getting off.[10]

Statistically, at least in the Eastern Division of the Northern District of Alabama, the majority of chapter 13 plans never are completed.[11] Many chapter 13 debtors who default under their plans have incurred post-petition debt without court or trustee approval.[12] They are unable to make both their plan payment and payments due on their unapproved post-petition debts. This Court has little sympathy for post-petition creditors who extend credit to chapter 13 debtors for nonessential purposes, especially now that it is easy to determine whether a prospective borrower is a debtor in an outstanding bankruptcy case through accessing PACER over the Internet. Nonetheless, the debtor has the primary responsibility of avoiding post-petition debt.

There are no restrictions in the Code prohibiting a chapter 13 debtor from incurring ordinary consumer debt after the commencement of the case and before the debtor is granted a discharge.[13]

---

[10] What this Court sees time and time again are chapter 13 debtors who default on their plan payments because they become burdened with additional debts incurred post-petition. While some of the new debts may be unavoidable (e.g. medical bills, car repairs), often they are for high interest charge card balances, payday loans and credit purchases that, with some discipline, could have been avoided. The ease of obtaining credit for many debtors, even though they are in an active chapter 13 case, is apparently too tempting to resist, even though the consequences often lead to the dismissal of their case.

[11] Although not the majority, many chapter 13 cases are successful, and debtors pay all installments called for under their plans and are granted a discharge. Moreover, it is not uncommon for debtors' financial or personal circumstances to improve during the course of their plans, and they are able to achieve an early exit from chapter 13 by prepaying their plans.

[12] *See*, 11 U.S.C. § 1305.

[13] Without court approval, ordinary consumer debt incurred post-petition cannot be allowed as an administrative expense or be secured by property of the estate. 11 U.S.C. § 364(b), (c). However, unless the court orders otherwise, a self-employed chapter 13 debtor may incur debt in the ordinary course of business, and such debt will be allowed as an administrative

8

If a post-petition consumer debt is incurred for necessities, Congress crafted a procedure allowing the debt to be placed under the plan and discharged like pre-petition debts. This procedure has three conditions which must be satisfied: First, the debt must be incurred "for property or services necessary for the debtor's performance of the plan." Section 1305(a)(2). Second, if obtaining the trustee's approval was practicable before the obligation was incurred, such approval must be obtained if the creditor knew or should have known such approval was required. Sections 1305(c), 1328(d). Third, a proof of claim for the debt must be filed in the case.[14] Section 1305(a)(2). After the claim is filed, the debt will be an allowed claim, assuming no objection is filed (Section 502(a)) and become a debt "provided for by the plan," which will be discharged when the debtor completes all plan payments. Section 1328(a). Admittedly, the procedure for discharging a post-petition debt under Section 1305 is cumbersome. However, it demonstrates Congress's intent to discourage post-

---

expense. 11 U.S.C. §§ 364(a), 1304. The Code does not prohibit a chapter 13 debtor from securing post-petition debt with the debtor's property, as opposed to the estate's property.

[14] Most authorities hold the debtor or trustee may not file a proof of claim on the creditor's behalf and force the creditor to participate in the case. *E.g., In re Perkins*, 304 B.R. 477 (Bankr. N.D. Ala 2004); *In re Sims*, 288 B.R. 264 (Bankr. M.D. Ala. 2003). Section 501(c) and Fed. R. Bankr. P. 3004 permit the debtor and trustee to file a proof of claim for a debt if the holder of the claim fails to timely do so. Although a strong equitable argument can be made as to why a post-petition creditor should not be forced into participating in a debtor's chapter 13 case, there is nothing in the Code or Federal Rules of Bankruptcy Procedure limiting the debtor's and trustee's option of filing a proof of claim on behalf of a creditor for a post-petition debt. The authors of at least one bankruptcy treatise do not believe there is such a limitation: "Technically, the creditor with a postpetition claim can avoid the Chapter 13 discharge even when prior trustee approval was not practicable by holding a claim that is not provided for under the debtor's plan. This may occur when the holder does not file a proof of claim. Thus, counsel for the [post-petition creditor] may elect not to file a proof of claim when the anticipated distribution under the debtor's plan will be de minimis. . . . [T]he effort of counsel for the [post-petition creditor] will be of no avail if counsel for the Chapter 13 debtor becomes aware of the debt and causes a proof of claim to be filed on behalf of the creditor. (footnotes omitted). A. Cohen & M. Miller, *Consumer Bankruptcy Manual* § 5:26 (2d ed. 2006).

9

petition debt unless it is absolutely necessary.[15]

The Code contains no procedure for the discharge of post-petition debts incurred for property or services not necessary for the debtor's performance of the plan. The make-shift remedy employed by most debtors who incur substantial post-petition debt is the dismissal of their case, either voluntarily or more often by defaulting on plan payments, and then they immediately file another case in which they schedule the unpaid debts left over from the dismissed case along with their new debts that were incurred post-petition during the dismissed case. However, dismissal and refiling raises additional issues that may result in the new case being dismissed, the debtor's plan being denied confirmation, or the debtor being denied automatic stay protection.[16]

Too much debt is the common malady shared by all chapter 13 debtors, and additional debt incurred post-petition should be avoided except when absolutely necessary. An unbridled interpretation of Sections 1322(b)(9) and 1327(b), which allows the estate to retain all the debtor's property throughout the case, facilitates the incurring of unnecessary post-petition debt by keeping

---

[15] For a concise summary of the Code's treatment of post-petition consumer debt in a chapter 13 case, see A. Cohen, *Consumer Bankruptcy Manual*, *supra* note 14. Section 5:26 of this manual contains a sample letter that debtors' counsel may want to consider sending to their clients immediately following plan confirmation. The letter alerts debtors to the requirement that new credit transactions must be pre-approved by the trustee, and failure to do so will jeopardize the debtor's "complete discharge that has been your goal."

[16] Paragraphs (3) and (4) of Section 362(c), added by BAPCPA, provide that debtors who have had prior cases dismissed within one year are presumed to have filed their new cases in bad faith, and unless they can demonstrate by clear and convincing evidence to the contrary, they lose automatic stay protection after 30 days if they had one prior case dismissed within the past year, or never receive such protection if they had two or more cases dismissed within the past year. Where substantial post-petition consumer debt was incurred for non-necessities, the Court may find the new case was filed in bad faith (Section 1325(a)(7)); or if the debtor's plan proposes to pay the new creditors little or nothing, the Court may find the plan was proposed in bad faith. Section 1325(a)(3).

10

post-petition creditors at bay. It also encourages debtors to ignore the limitations placed on the allowance and discharge of post-petition debt under Sections 1305(a) and 1328(d). Manipulating the content of the estate's property and expanding automatic stay protection beyond what Congress intended should not become substitutes for adhering to the restrictions and discipline provided under the Code for incurring and discharging post-petition debt.

It is equally important to mention that the retention of all property in the estate during the life of a case is not practical, and a literal and unqualified interpretation of Sections 1322(b)(9) and 1327(b) leads to an absurd result.[17] In *Heath, supra*, the Seventh Circuit stated, "[i]t would presumably be an abuse of discretion for the bankruptcy judge to confirm a plan that retained more property in the hands of the trustee than was reasonably necessary to fulfill the plan . . . ."[18] To hold otherwise would create a jurisdictional nightmare for bankruptcy courts because any disputes arising during the plan term, which were arguably related to property of the estate, would confer jurisdiction on the bankruptcy court and entangle it in even the pettiest of controversies and immerse the court in the day-to-day lives of debtors. *See Id.* For example, do the debtors in these cases intend for the Court to hear a dispute with the neighborhood grocer if the debtor is overcharged for an apple? *Id*. Do these debtors intend for the Court to monitor their use of future earnings throughout the entire

---

[17] The Supreme Court has instructed lower courts to apply the clear and unambiguous language of a statute unless doing so will lead to an absurd result. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002); *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989); *Heydenfeldt v. Daney Gold & Silver Mining Co.*, 93 U.S. 634 (1876). To avoid such an absurd and unworkable result, a reasonable interpretation of Sections 1322(b)(9) and 1327(b) is to limit the amount of property and earnings that is to remain vested in the estate post-confirmation to that reasonably needed to fund the debtor's chapter 13 plan.

[18] *Heath* at 524. The above sentence quoted from the *Heath* opinion, immediately follows the sentence adopted by the Eleventh Circuit in *Telfair* when it "echo[ed] the conclusion of the Seventh Circuit." *Telfair* at 1340.

11

life of their plans? Do the debtors contemplate submitting periodic household budgets for the Court's approval, which will authorize the use of property of the estate for ordinary household expenditures?[19] Would debtors seek Court approval to hold a garage sale for property of the estate having a value of $50? The answer to these rhetorical questions is obviously no. Congress did not intend for bankruptcy courts to serve as continuous overseers of the financial lives of chapter 13 debtors, nor do bankruptcy courts have the time to serve in such a capacity. Between confirmation of a chapter 13 plan and discharge, the Code anticipates a debtor will make the payments called for under the plan, and if there is no payment default or material change in the debtor's circumstances justifying a modification in the plan, the debtor should have little or no contact with the bankruptcy court. Accordingly, except for that portion of the estate needed to fund the confirmed plan, the remainder of the estate should vest back in the debtor at confirmation, to be used at the debtor's discretion so the debtor can get on with his or her financial life.

At the risk of being redundant, it is instructive to conclude by again referring to the Seventh Circuit's opinion in *Heath*:

> It is true that the Bankruptcy Code says that all the earnings of a Chapter 13 debtor are property of the estate . 11 U.S.C. § 1306(a)(2). But it also says that "confirmation of a plan vests *all* the property of the estate *in the debtor*" unless the plan provides otherwise, § 1327(b) . . . , which we think scotches any inference that Congress intended to render *all* Chapter 13 debtors legally incompetent to manage *any* of their

---

[19] An argument may be made that confirmation of a plan based on a debtor's schedules I and J (income and expenses) implies court approval of post-petition expenditures within the budget represented by these schedules. However, over the course of a chapter 13 case with a commitment period of up to five years, incomes and household expenses vary from year to year, or even month to month. What amount of change would terminate the court's implied approval of the debtor's use of property of the estate? Section 1306(b) provides, "Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate." However, possession does not imply authority to dispose of property.

12

> property. We read the two sections, 1306(a)(2) and 1327(b), to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan. It would presumably be an abuse of discretion for the bankruptcy judge to confirm a plan that retained more of the property in the hands of the trustee than was reasonable necessary to fulfill the plan, though we need not decide that in this case.

*Heath* at 524.

Unlike the Court of Appeals in *Heath*, this Court must decide whether to confirm the plans in these cases that propose to retain more property in the estates than is reasonable necessary to fulfill the plans. This Court agrees with the Seventh Circuit's presumption, and finds it would be an abuse of discretion to confirm the plans proposed in these cases without first striking the provisions that purport to allow the estates to retain excess property and earnings.

### III. Conclusions of Law

For the reasons discussed above, the Court concludes that the provisions in the proposed plans purporting to delay vesting of all of the estates' property in the debtors beyond plan confirmation and until the case is closed, dismissed or converted, do not comply with chapter 13 of the Code and Section 362(a). Thus the plans violate Section 1325(a)(1). Moreover, because of the inclusion of these provisions, the Court finds the plans were not proposed in good faith and violate Section 1325(a)(3). Accordingly, the Court hereby DENIES confirmation of these plans as now proposed.

Except for the offending provisions discussed herein, the plans otherwise comply with Section 1325 and are due to be confirmed. Rather than reschedule these cases for plan confirmation, the Court will enter orders confirming the proposed plans; however each order will contain the

13

following provision:

> Property of the Estate - "[T]he plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." *Telfair v. First Union Mortgage Corp.,* 216 F.3d 1333, 1340 (11th Cir. 2000) (quoting *Black v. United States Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997). Any provision in the plan, and in any future amendment or modification thereof, purporting to cause the estate to retain more property than necessary for the fulfillment of the plan is hereby STRICKEN and DISALLOWED.

To the extent the proposed plans conflict with this Court's confirmation order, including any conflict with the above provision quoting *Telfair*, the confirmation order shall control. The plan confirmation orders conforming with this opinion will constitute judgments entered pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure.

Dated: September 6, 2007

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge